# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-1046V
Filed: April 1, 2020
Refiled in Redacted Form: July 1, 2020

UNPUBLISHED

| | |
|---|---|
| ROBERT WILLIAMS, <br><br>     Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>     Respondent. | Special Master Horner <br><br> Finding of Fact; Shoulder Injury Related to Vaccine Administration; SIRVA; Influenza (flu) Vaccine; Onset |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.
*Traci R. Patton*, U.S. Department of Justice, Washington, DC, for respondent.

### FINDING OF FACT[1]

  On August 3, 2017, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that as a result of a pneumococcal ("PCV13") vaccination that he received on February 16, 2016, he suffered a left Shoulder Injury Related to Vaccine Administration ("SIRVA"). Respondent recommended that compensation be denied, arguing, *inter alia*, that there is not preponderant evidence that petitioner's shoulder pain began within a timeframe that would support a finding of vaccine causation, namely 48 hours. For the reasons described below, I now issue the below finding of fact. I conclude that petitioner experienced onset of shoulder pain within 48 hours of receiving his vaccination.

---

[1] When this decision was originally filed the undersigned advised his intent to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner filed a motion to redact certain information. This decision is being reissued without specific named reference to petitioner's primary care physician, primary care office nurse, primary care office/clinic, or the chronic condition referenced herein. Except for those changes and this footnote, no other substantive changes have been made. This decision will be posted on the court's website with no further opportunity to move for redaction.

I. **Procedural History**

This case was first assigned to Special Master Millman. (ECF No. 4.) On April 26, 2018, respondent filed his Rule 4 report, recommending that entitlement be denied in this case. (ECF No. 14.) Respondent raised the issue that "the most contemporaneous documentation does not establish that the onset of petitioner's pain occurred within forty-eight hours of the vaccination." (*Id.* at 6.) Eventually, Special Master Millman ordered petitioner to file an expert report to support his case.

Subsequently, this case was reassigned to my docket on June 5, 2019. (ECF No. 26.) On July 15, 2019, petitioner filed a motion to amend schedule, requesting petitioner's deadline to file an expert report be temporarily suspended in light of ongoing discussions regarding the scheduling of depositions. (ECF No. 27.) A status conference was held on August 6, 2019 to discuss petitioner's motion, which was ultimately granted. Petitioner's deadline was suspended and petitioner was granted authority to serve subpoenas on his primary care physician ("PCP") and a primary care office nurse ("PCN") to appear for depositions. (ECF Nos. 29-30.) On November 29, 2019, petitioner filed additional records and transcripts of the depositions of the PCP and the PCN. (ECF No. 32.)

On January 14, 2020, petitioner filed a motion for a finding of fact requesting a finding that onset of petitioner's shoulder injury was within 48 hours of receiving his February 16, 2016 pneumococcal vaccination.[2] (ECF No. 35.) Petitioner argues that the medical records show that petitioner "consistently reported to his medical providers that his pain began with the injection he received on February 16, 2016." (*Id.* at 7.) Additionally, petitioner argues that the deposition testimony from his PCP shows that petitioner is reliable, a good historian, and a truthful person, and further that his PCP recalled petitioner telling him that the shoulder pain was immediate after the vaccination was administered. (*Id.* at 8.) Moreover, his PCP did not dispute that petitioner reported shoulder pain during an intervening visit although his records did not indicate such report of shoulder pain. (*Id.*) Therefore, petitioner argues that the medical records make clear that petitioner's pain began within 48 hours of receiving his vaccination. (*Id.* at 9.)

On February 13, 2020, respondent filed a response to petitioner's motion for a finding of fact. (ECF No. 36.) Respondent "maintains that the record as a whole does not support a finding that a preponderance of the evidence supports a finding that the onset of petitioner's left-sided shoulder pain began within forty-eight hours of his PCV13 vaccination." (*Id.* at 1.) Respondent points to several instances where petitioner failed to report shoulder pain, including the phone call to the PCP the day after vaccination and during the visit with the PCP three months after vaccination. (*Id.* at 10.) Respondent also stresses that the first time petitioner is recorded to have been suffering shoulder pain was on June 1, 2016, when petitioner presented to urgent care, more than three months after vaccination. (*Id.* at 10-11.) Therefore, respondent argues that

---

[2] Petitioner also urged me to further hold that petitioner is entitled to compensation (ECF No. 35, p. 10); however, this ruling is limited to determining the onset of petitioner's shoulder symptoms.

2

"while the medical record and factual testimony support a finding that petitioner experienced shoulder pain at some point following the PCV13 vaccination, neither the medical records nor the factual testimony establish by a preponderance of the evidence that petitioner's left-sided shoulder pain began within forty-eight hours of the administration of the PCV13 vaccination." (*Id.* at 11-12.)

Petitioner filed no reply.

## II. Factual History

### a. Medical Records

Petitioner received a pneumococcal vaccination in his left deltoid on February 16, 2016, during a routine follow-up visit with his PCP at the PCP's office/clinic. (Ex. 6, p. 1154.) On the same day, petitioner received a Hep B vaccination in his right deltoid. (*Id.*) According to the PCN, petitioner tolerated the vaccine well and there was no pain or reaction at the injection site. (Ex. 3, p. 262.) The following day on February 17, 2016, petitioner called his doctor's office inquiring about his medication and the PCP indicated that the office had issues with the pharmacy. (*Id.* at 258.)

On April 5, 2016, petitioner presented for lab work. (Ex. 9, p. 508.) On May 10, 2016, he had a routine follow-up visit with his PCP to discuss his lab work and possible adjustments to his medications for a chronic condition unrelated to his alleged injury. (*Id.* at 524.) Petitioner did not have any specific complaints. (Ex. 2, p. 116; Ex. 3, pp. 196-198.) The PCP noted that petitioner denied having any problems and was "feeling well except wearing sunglasses due to light sensitivity." (Ex. 2, p. 116; Ex. 3, p. 196.) Petitioner's chronic condition was stable and petitioner was told to continue his medication. (Ex. 3, p. 197.) Petitioner did not need any vaccines at that visit and was scheduled to return in four months. (*Id.*)

On June 1, 2016, petitioner presented to urgent care for left shoulder pain ("c.o left shoulder pain x 3 months after receiving hep b vaccine").[3] (Ex. 2, p. 152; Ex. 9, p. 586.) He reported "[n]o trauma, redness, fever, chills, n/v, HA, dizziness." (*Id.*) Reason for visit was listed as "[p]ain to left arm [status post] vaccine; VACINATION [sic.] PAIN. (Ex. 9, p. 561.) Petitioner had an x-ray of his shoulder, which had no significant findings, and was discharged the same day. (Ex. 2, p. 151; Ex. 9, p. 588.) His discharge diagnosis was "shoulder pain," which was characterized as "likely tendinitis." (Ex. 9, p. 588.)

Petitioner returned to his PCP on July 5, 2016 for "Lt shoulder pain after vaccine shot on 02/2016." (Ex. 9, p. 625.) He complained of "stabbing pain from left deltoid to

---

[3] Notably, this report attributes petitioner's pain to the wrong vaccination. Petitioner received his Hep B vaccine in his right shoulder and his pneumococcal vaccination in his left shoulder. The location of petitioner's injections was initially an issue litigated by the parties; however, on October 12, 2018, respondent confirmed that he agrees petitioner received his pneumococcal vaccine in his left deltoid. (ECF No. 21; ECF No. 36, p. 1.)

elbow." (Ex. 2, p. 156; Ex. 3, p. 117.) Petitioner reported that he had pain "since injection in L deltoid in Feb" and denied any recent or remote injury. (*Id.*) Petitioner reported frequent stabbing pain and difficulty using his left arm. (*Id.*) Petitioner was assessed with likely frozen shoulder syndrome versus rotator cuff injury versus deltoid tendonitis. (Ex. 3, p. 118.) The PCP doubted petitioner had a vaccine reaction but considered that vaccination could have led to local inflammation leading to capsulitis. (*Id.*) An MRI was ordered, which was later completed on September 16, 2016.[4] (Ex. 3, p. 118; Ex. 9, pp. 719, 721-22.)

In a follow up consultation note seeking a referral to orthopedics, the PCP relayed that petitioner had a "5 month hx of L shoulder pain and decreased mobility following deltoid IM injection in 2/2016 (13 valent pneumococcal conjugate vaccine)." (Ex. 6, p. 28.) He was advised to resubmit the referral request after an MRI was complete. (In a further follow up note two months later, he stressed regarding the vaccination that "[p]atient certainly believes that this was cause and the problem did start very soon after immunization." (*Id.*)) The PCP also referred petitioner for physical therapy on July 6, 2016, reporting again that petitioner had a five-month history of left shoulder pain and decreased mobility following his pneumococcal vaccination. (Ex. 3, pp. 240, 256.)

On September 20, 2016, the PCP again referred petitioner for an orthopedics consultation, stating that petitioner "had IM injection of PCV 13 vaccine in L deltoid in Feb 2016 and subsequently has had pain [decreased range of motion] of L shoulder that is debilitating and has not responded to NSAIDs and ROM exercises." (Ex. 3, p. 257.) He added that petitioner was concerned that the PCV13 vaccination caused his condition. (*Id.*)

Subsequently, on June 29, 2017, petitioner presented for physical therapy. (Ex. 5, p. 4.) At that time, he indicated that his shoulder pain and reduced range of motion began "the next day" following his February 2016 vaccination. (*Id.*)

### b. Petitioner's Affidavit

Petitioner affirmed that he went to his PCP's office/clinic for a four-month checkup on February 16, 2016, where he received two injections, one in each shoulder. (Ex. 4.) Petitioner stated that that he was given a pneumococcal vaccine in his left shoulder and a Hepatitis B vaccine in his right. (*Id.* at 1.) Petitioner indicated that the next day following his vaccinations, petitioner "felt quite a bit of discomfort in [his] left shoulder around the injection site," and he "thought it would just go away, but it didn't. It only intensified." (*Id.*) Petitioner stated that he called the clinic a few days later because he couldn't move his left arm without experiencing extreme pain and was told to come in to the clinic. (*Id.*) Petitioner stated that he went to the clinic, where he was

---

[4] Notably, the MRI study report indicates petitioner's pain had been present "x 5 months." (Ex. 9, p. 721.) This is consistent with the PCP's notation at the time he ordered the MRI; however, the MRI report was not generated until two months later.

examined and had an x-ray. (*Id.*) Petitioner recalled being told he had a frozen shoulder. (*Id.*)

### c. Depositions

On September 20, 2019, depositions of petitioner's PCP and PCN were taken. (Ex. 7 ("PCP Tr."); Ex. 8 ("PCN Tr.").) The PCP testified that petitioner has been his patient for over five years and that petitioner has been truthful and is a good historian when giving his medical facts. (PCP Tr. 8-10.) He could not specifically recall when petitioner first reported his shoulder injury but only that it was sometime between petitioner's February 2016 appointment and his July 2016 visit. (PCP Tr. 11.) He testified that there was a visit in between February and July, but he could not recall whether petitioner discussed his shoulder pain at the May 10, 2016 visit. (*Id.* at 11-12.) The PCP testified that petitioner was convinced his pain was related to his vaccination because "nothing else had happened to his left shoulder that would explain the pain." (*Id.* at 14.) He testified that he explained to petitioner that vaccine reactions were uncommon events, but do occur, and prescribed petitioner ibuprofen, warm or ice compressions, and range of motion exercises to manage petitioner's frozen shoulder syndrome. (*Id.*) The PCP testified that it was his impression that petitioner started experiencing pain immediately after the vaccination. (*Id.* at 16, 25-27.) He did recall that petitioner told him that the pain occurred at the time of the vaccination and that it was more severe than pain that petitioner had experienced with vaccinations previously. (*Id.* at 16, 25.)

The PCP testified that he did not have a specific recollection of petitioner mentioning his shoulder pain during his May 2016 visit and added "I don't believe that it's incorrect." (*Id.* at 16-17.) Additionally, the PCP explained that it is possible that petitioner could have complained about shoulder pain and that he would not have noted it in the record if he thought the pain was part of the normal response to vaccination. (*Id.* at 21-22.) He explained that if the pain was something that was out of the ordinary and needed immediate attention, then he would have noted it. (*Id.*) He indicated that there are patients who have lingering pain at the vaccination site three months subsequent to immunization. (*Id.* at 22.) The PCP also explained that nursing personnel usually input the chief complaint and that he has the ability to modify if need be. (*Id.*)

The PCN testified that he could not recall whether he saw petitioner at the clinic within seven days after petitioner received his vaccination. (PCN Tr. 6-7.) He testified, however, that he did not specifically ask petitioner to get an x-ray. (*Id.* at 7.) The PCN did recall administering the vaccines at issue, but did not remember any immediate reports of unusual pain from petitioner after administrating the vaccine. (*Id.* at 8.) He recalled making an addendum to his notes of the day that he administered petitioner's vaccination. (*Id.* at 8-9.) The PCN testified that he was prompted to go back to his notes when petitioner asked him to testify, but that adding the addendum was self-initiated. (*Id.* at 9.) Additionally, he added that his notation of no pain or reaction at the injection site is the "standard language" that he uses and that he could not recall his

5

"exact action" in recording that notation. (*Id.*) Although the PCN could not recall the timeframe, he did recall that petitioner made a phone call regarding his reaction to the vaccination. (*Id.* at 10-11.) However, he believed he made a record of that phone call. (*Id.* at 12.)

### III.   Legal Standard Applied

The process for making determinations in Vaccine Program cases regarding factual issues begins with consideration of the medical records. 42 U.S.C. § 300aa-11(c)(2). The special master is required to consider "all [ ] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as "the results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." 42 U.S.C. § 300aa-13(b)(1).

The special master is then required to weigh the evidence presented, including contemporaneous medical records and testimony. *See, e.g. Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993). Specifically, "[t]he special master or court may find the first symptom or manifestation of onset or significant aggravation of an injury, disability, illness, condition, or death described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." 42 U.S.C. § 300aa-13(b)(2).

Medical records that are created contemporaneously with the events they describe are presumed to be accurate and trustworthy because they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *see also Doe v. Sec'y of Health & Human Servs.*, 95 Fed. Cl. 598, 608 (2010) ("[g]iven the inconsistencies between petitioner's testimony and his contemporaneous medical records, the special master's decision to rely on petitioner's medical records was rational and consistent with applicable law"); *Rickett v. Sec'y of Health & Human Servs.*, 468 Fed. Appx. 952 (Fed. Cir. 2011) (non-precedential opinion). Accordingly, if the medical records are clear, consistent, and complete, then they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19-20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

### IV.   Finding of Fact

In light of the above-discussed legal standard and based on my review of the entire record, I find preponderant evidence that petitioner's alleged vaccine-caused shoulder pain began within 48 hours of his February 16, 2016 pneumococcal vaccination. The contemporaneous treatment records repeatedly and consistently reflect notations of an onset "after receiving" his vaccination, "following deltoid IM

6

injection in 2/2016," "after vaccine shot," "since injection," and "very soon after immunization," all of which together tend to suggest an immediate onset.  (*E.g.*, Ex. 2, p. 152; Ex. 3, pp. 14, 113, 117; Ex. 6, p. 28.)  This is further confirmed by the testimony of petitioner's PCP, who testified that he considered petitioner a good historian generally and that he did recall petitioner expressing that his shoulder pain began "immediately" or "right after" his vaccination as well as the fact that petitioner was convinced that his pain was related to his vaccination.  (PCP Tr. 14, 16, 26-27.)

      Respondent disagrees that the above-referenced notations regarding onset are necessarily indicative of pain occurring within 48 hours of vaccination.  (ECF No. 36, p. 12, n. 4.)  Rather, respondent contends that these notations of "since," "after," etc, indicate only onset occurring at some point following vaccination, but not necessarily within 48 hours.  However, in light of the specific facts of this case, and when viewing the record as a whole, I disagree.

      First, given the context of the notations – i.e. petitioner seeking a diagnosis for his shoulder pain - I give some weight to the fact of the records indicating that petitioner consistently and affirmatively associated onset of his pain directly to his vaccination regardless of the fact that the medical providers used terms that were arguably vague as to timing.  Second, these notations also include further context in the form of references to the duration of petitioner's symptoms.  For example, when petitioner first reported his shoulder pain as occurring "after receiving" his vaccination the provider also recorded that the pain had been present "x 3 months." (Ex. 2, p. 152.)  Thus, although this notation again is not exact vis-à-vis the date of vaccination, it confirms that the notation of pain "after" injection cannot be interpreted to refer to *any* point between vaccination and the date of the medical visit.[5]  Petitioner's PCP later, and similarly, recorded in July of 2016 that petitioner had experienced symptoms "since" his injection and then specifically reported in his referrals to both physical therapy and orthopedics that petitioner had a five-month history of pain related specifically to his February 2016 vaccination.  (Ex. 3, pp. 117, 240, 256.)  Third and relatedly, the PCP, who was responsible for at least some of the notations in question, confirmed in his deposition that he understood petitioner to be reporting an immediate onset.  (PCP Tr. 14, 16, 26-27; Ex. 3, p. 117.)  And finally, petitioner eventually reported more explicitly to his physical therapist and in his affidavit that his pain began "the next day." (Ex. 4, p. 1; Ex. 5, p. 4.)  For these reasons, and based on the record as a whole, I find the notations characterizing onset as "since," "after receiving," "following," and "very soon after"

---

[5] Given the dates of vaccination (February 16) and the appointment at which this history was given (June 1), an exacting calculation of a three-month history of pain would not extend as far back as petitioner's actual date of vaccination.  However, it has been observed in prior SIRVA cases that histories of present illness reported by patients may include imprecise or generalized recollections of onset that should not be overanalyzed where they are consistent with the appropriate timeframe.  *See, e.g.*, *Cooper v. Sec'y of Health & Human Servs.*, No. 16-1387V, 2018 WL 1835179, n.13 (Fed. Cl. Spec. Mstr. Jan. 18, 2018).  Here, although the cited duration is clearly off by about two weeks, petitioner's reported use of a whole-month interval appears likely to be a generalization and petitioner explicitly linked onset to a specific vaccination known to have been given on the date at issue.  Moreover, given the record as a whole, the fact that petitioner did not more precisely report a three-and-a-half-month history of pain is not as significant as it otherwise could have been.

injection are best understood as indicating onset was effectively immediate, or within 48 hours of, vaccination.

As noted above, however, respondent raises several additional counterpoints. First, respondent stresses that petitioner's records reflect that he did not report the presence of shoulder pain until June of 2016, more than three months after his vaccination. (ECF No. 36, pp. 10-11.) And actually, the first time that petitioner reported shoulder pain to his PCP specifically was during a July 5, 2016 visit, about five months after vaccination. (*Id.*) Respondent argues that this delay should cast doubt on his claim of immediate onset. (*Id.* at 11-12.) Respondent also indicates that the day after receiving his vaccination, petitioner had a phone call with his PCP regarding medication and failed to reference any shoulder pain. (*Id.* at 10.) Additionally, respondent notes that during that five-month period, petitioner returned to the PCP for routine care of a chronic condition and was not recorded to have reported any shoulder pain. (*Id.* at 2, 10.) Respondent also points out that the PCN did not recall petitioner suffering any immediate or unusual pain. (*Id.* at 6.) In that regard, the nursing record reflecting the administration of petitioner's vaccinations indicates that "[patient] tolerated vaccine well" and that there was "[n]o pain or reaction at site." (Ex. 6, p. 1157.) Petitioner averred that he called the clinic "a few days later" to report his shoulder pain. (Ex. 4, p. 1.) He indicated that he was told to come in, was examined, and was x-rayed. (*Id.*) However, there are no records to support petitioner's recollection.

Although there was a delay in seeking treatment as well as an intervening appointment and phone calls where the record is silent regarding any shoulder pain (Ex. 3, pp. 191-201), that intervening activity was for a specific and limited purpose (securing and reviewing medications for his unrelated chronic condition) and I am not persuaded in this case that the fact of this activity outweighs the remainder of the contemporaneous records.  In prior decisions it has been held that neither a delay in seeking treatment in itself, nor a failure to report symptoms to a specialist or emergency room provider prior to later seeking treatment, is necessarily dispositive of whether a petitioner's shoulder pain began within 48 hours of vaccination.  See *Forman-Franco v. Sec'y of Health & Human Servs*., No. 15-1479V, 2018 WL 1835203 (Fed. Cl. Spec. Mstr. Feb. 21, 2018); *Tenneson v. Sec'y of Health & Human Servs*., No. 16-1664V, 2018 WL 3083140 (Fed Cl. Spec. Mstr. Mar. 30, 2018), *mot. rev. denied* 142 Fed. Cl. 329 (2019); *Gurney v. Sec'y of Health & Human Servs.*, No. 17-481V, 2019 WL 2298790 (Fed. Cl. Mar. 19, 2019).  Moreover, the PCP could not confirm that petitioner's shoulder pain was not raised at this appointment.  (PCP Tr. 16-17.)  He had no specific recollection of the appointment but indicated that it is possible he could have failed to record a report of shoulder pain.  (*Id.* at 21-22.)

Additionally, petitioner's recollection that he made a report of shoulder pain via a call to the clinic is supported by the testimony of the PCN.  Although he could not recall the timing, the PCN recalled that petitioner had called him to complain about his shoulder pain.  (PCN Tr. 10-11.)  With regard to the administration of petitioner's vaccination, he testified that he could not recall whether petitioner reported any immediate pain.  (PCN Tr. 7-8.)  He explained that the notations in the medical record

denying any pain or reaction at the injection site is a standard notation; however, he could not independently recall making the notation. (Tr. 9.) Notably, however, the PCN denied ever recommending that petitioner have an x-ray performed (PCN Tr. 7) and petitioner's records reflect that an x-ray was performed on June 1, 2016, rather than in the days after his vaccination. (Ex. 3, p. 171.) Thus, the timing and events surrounding petitioner's interaction with the PCN remain unclear. Nonetheless, upon review of the complete record, the evidence preponderates in favor of a finding that petitioner experienced onset of left shoulder pain within 48 hours of his vaccination.

### V.     Conclusion

In light of all of the above, I find that there is preponderant evidence that petitioner's alleged left shoulder pain began within 48 hours of his February 16, 2016 pneumococcal vaccination.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
